**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM MCCLEESTER, and DAWN )
MCCLEESTER, husband and wife, )
          Plaintiffs, )
           )     CIVIL ACTION NO. 3:06-120
      v. )
           )     JUDGE KIM R. GIBSON
DEPARTMENT OF LABOR AND )
INDUSTRY, HIRAM G. ANDREWS )
CENTER, CAROL MACKEL, in her )
official capacity and individually, EUGENE )
RICKABAUGH, in his official capacity )
and individually, JOE SMOLKO, in his )
official capacity and individually, JOE )
GORSUCH, in his official capacity and )
individually, JAMES WILDEMAN, in his )
official capacity as Director of the Bureau )
of Human Resources and individually, )
SUE OSBORN, in her official capacity )
and individually, STEPHEN M. )
SCHMERIN, in his official capacity as )
Secretary of the Department of Labor and )
Industry, DENNIS YEAGER, in his )
official capacity as Deputy Director of the )
Hiram G. Andrews Center and )
individually, DONALD RULLMAN, in )
his official capacity as the Director of the )
Hiram G. Andrews Center and )
individually, WILLIAM A. GANNON, )
in his official capacity as Executive )
Director of the Office of Vocational )
Rehabilitation and individually, JOHN P. )
SARIANO, JR., in his official capacity )
as the former Director of the Bureau of )
Human Resources and individually, )
          Defendants. )

**MEMORANDUM OPINION & ORDER**

Now before the Court is Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1)

1

and 12(b)(6) (Document No. 4), as well as Plaintiffs' Response thereto (Document No. 6). Plaintiffs filed this action on May 31, 2006, alleging various infringements of William McCleester's (hereinafter "McCleester" or "Plaintiff") constitutional rights and stating claims under 42 U.S.C. §§ 1983, 1985(3), and various state tort laws, including infliction of emotional distress and defamation. Document No. 1, ¶¶54-87. McCleester's wife, Dawn, also alleged a loss of consortium and certain economic injuries. *Id.* at ¶¶ 88-89. Plaintiffs seek total damages against Defendants jointly and severally in an amount exceeding $75,000, as well as costs, interest, and such other relief as this Court deems appropriate. Id. at ¶¶ 58, 31, 69, 81, 87, and 89. McCleester also requests full reinstatement to his former position at the Hiram G. Andrews Center. *Id.* at ¶ 58. Defendants filed the motion *sub judice* on August 1, 2006, and the Court heard oral argument on May 3, 2007. For the following reasons, the Court will grant the motion in part and deny the motion in part.

## I. BACKGROUND[1]

McCleester served as a Facilities Maintenance Manager at the Hiram G. Andrews Center (hereinafter "the Center") for eleven years. In that capacity, Plaintiff planned, organized, and directed the Center's maintenance, including such things as plant maintenance, grounds keeping, and vehicle maintenance. McCleester supervised dozens of employees, had a secretary, an air-conditioned office, keys to the entire Center, and access to various office equipment, including a computer, fax machine, and intercom system. As a civil service employee, Plaintiff's employment was not subject to the Center's will, but was protected by certain due process considerations. McCleester's performance at

---

[1] The Court is required to assume the truth of Plaintiffs' allegations and construe all reasonable inferences in their favor. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). Unless otherwise indicated, the facts are taken from Plaintiffs' Complaint and any consistencies between the Parties' filings. Although no indentations or marks are used, the Court has, where appropriate, directly quoted the language of the Parties.

2

his job was generally well received and he received various professional awards and commendable performance reviews.

Plaintiff suffers from impaired hearing. He was also diagnosed with diabetes in May 1987 and with multiple sclerosis in August 1995. Symptoms of the latter include pain, partial or total paralysis of the limbs, muscle weakness, numbness, affected memory, and fatigue, and can be aggravated by such stimuli as stress and heat, among others. McCleester must wear a hearing aid to counteract his impairment and uses an insulin pump to regulate his diabetes. Having multiple sclerosis and diabetes also requires Plaintiff to take medications like Oxycontin. Because the Center is a rehabilitation facility providing services to individuals with disabilities, McCleester thought it inappropriate to have narcotics on the premises. He therefore traveled home throughout the workday to administer his medications.

Plaintiff alleges that various Center employees—led by Carol Mackel—conspired to obstruct his promotion and orchestrate his termination. Mackel first refused to file necessary paperwork to support McCleester's promotion and later encouraged the director of the Center, Dr. Albert Reynolds, to investigate Plaintiff's proficiency. Allegedly, Mackel also filed against McCleester various complaints, including a falsified Workplace Violence Incident Report. Plaintiff did not know his performance was deficient in any respect or that he was the subject of an investigation. Nor was he given any warnings, progressive discipline, or opportunities to correct his inadequate behavior.

Instead, on June 1, 2004, Plaintiff attended a five-hour meeting with Reynolds during which he was not provided any breaks or permitted to use his medication. McCleester was given neither access to his records nor the chance to explain the complaints and reports against him. Later that week, the Center suspended Plaintiff from his duties pending investigation and barred him from entering Center property or communicating with other Center employees. On June 18, 2004, Plaintiff appealed that

3

suspension to the State Civil Service Commission (hereinafter "the Commission").

McCleester, along with his counsel, attempted to attend a second meeting on August 2, 2004, but the Center excluded counsel from the proceedings. At the meeting, Plaintiff was confronted with allegations from various Center employees criticizing his demeanor and work habits, accusing him of stealing Center property, and reporting inappropriate use of his office computer. Plaintiff was then fired from the Center on August 17, 2004, and added the termination to his administrative appeal. The Commission conducted a seven-day hearing and, although it found that McCleester had behaved inappropriately, on June 30, 2005, it reduced his termination to a fifteen-day suspension with back pay and benefits. When the Department of Labor and Industry (hereinafter "the Department") appealed, that adjudication was affirmed in the Commonwealth Court.

Plaintiff therefore returned to the Center on August 1, 2005, but found his responsibilities greatly reduced: he was not given his previous position; he had no secretary or access to office equipment; he was not allowed to supervise or interact with Center employees; his working hours were restricted; and he was no longer involved with day-to-day operations. Furthermore, McCleester's office was an eight-by-ten room with no air-conditioning. This treatment is ongoing, and Plaintiff's office becomes excessively hot and has no windows that open to the outside. Directors at the Center have allegedly stated that McCleester would never enjoy the position he once did. In one instance, Defendant Dennis Yeager attempted to block Plaintiff from making a presentation at a town meeting. The supervisor that permitted McCleester to proceed with the presentation was subsequently relieved of her supervisory duties over Plaintiff.

The conditions that Plaintiff found upon returning to work—particularly the excessive heat of his new office—have exacerbated the symptoms of his multiple sclerosis and diabetes. He suffers

increased headaches, leg pain, and increased blood sugar levels. As a result, he has been unable to work since February 13, 2006. In this suit he alleges damage to his reputation in the workplace and damage to the reputations of both he and his wife in the community. McCleester further claims that the Center has not remitted the back pay the Commission awarded and that Defendants have not credited McCleester with the number of vacation days, sick days, personal days that they have given similarly situated employees.

According to Count I of the Complaint, Defendants, acting in an ultra vires manner and in their official capacities, "have engaged and continue to engage in behavior that violates Plaintiff's constitutional property interest right both individually and as an employee of the Commonwealth" of Pennsylvania. Document No. 1, ¶ 56. Count II alleges that "Defendants have entered into conspiracies with each other . . . to deprive Plaintiff . . . of his privileges and immunities under the laws, specifically, Plaintiff's civil rights guaranteed by the Fourteenth Amendment," in violation of 42 U.S.C. § 1985(3). *Id.* at ¶ 60. In Count III, McCleester claims that through "conduct not rationally related to legitimate government objectives," Defendants have, "both individually and in their official capacities violated [Plaintiff's] right to equal protection [by] not crediting him with the same pay, vacation days, sick days, and personal days as other employees that have the same time and experience as Plaintiff." *Id.* at ¶¶ 65-66. Counts IV and V allege that Defendants' behavior constitutes negligent infliction of emotional distress, intentional infliction of emotional distress, defamation, and slander according to Pennsylvania common law. *Id.* at ¶¶ 70-81. Finally, in Count VI, Dawn McCleester pursues economic damages stemming from her obligations for Plaintiff's medical expenses, her loss of Plaintiff's past and future earnings and earning capacity, and her loss of consortium. *Id.* at ¶¶ 88-89.

Defendants now claim that the Commission's adjudication precludes Plaintiff from relitigating

the circumstances of his termination, thus barring the § 1985 claim in Count II and at least portions of the § 1983 claims in Counts I and III. Document No. 5, pp. 6-7. The Motion to Dismiss also argues that Eleventh Amendment immunity extends to the Department and the Center, as state agencies, and protects from monetary damages the individual defendants sued in their official capacities. Moreover, to the extent that individual Defendants were acting in their official capacities, they do not qualify as "persons" under § 1983. *Id.* at 10-12. Defendants assert a similar protection from the state-law claims under the doctrine of sovereign immunity. Lastly, Defendants contend that Plaintiff has failed to state claims under the Due Process or Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, is not entitled to relief under the First Amendment pursuant to any retaliation theory, and has not adequately pleaded the requirements of a § 1985 conspiracy claim. *Id.* at pp.13-22.

## II. LEGAL STANDARD

When analyzing a motion under FED. R. CIV. P. 12(b)(6), the issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support the claim. *Lake v. Arnold*, 112 F.3d 682, 688 (3d Cir. 1997); *Niami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). A claim warrants dismissal only if it is clear that relief would not be available under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1957). When a 12(b)(6) motion is granted, a district court should not dismiss the civil action but instead provide the claimant at least one opportunity to amend the defective complaint. However, when further amendment would be futile, an action or claim may be dismissed with prejudice and that plaintiff barred from raising it again. *Heller v. Fulare*, 371 F. Supp. 2d 743, 746 (W.D. Pa. 2005) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004)).

6

In assessing the propriety of dismissal, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *D.P. Enters., Inc. v. Bucks County Cmty. Coll.*, 725 F.2d 943 (3d Cir. 1984). "In considering a rule 12(b)(6) motion, a court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Steinhardt Group v. Citicorp*, 126 F.3d 144, 145 (3d Cir. 1997).

## III. ANALYSIS

### A. The State Civil Service Adjudication Does Not Preclude Plaintiff's Complaint

Congress implemented the dictate of the Full Faith and Credit Clause, U.S. CONST. art IV, § 1, in 28 U.S.C. § 1738, according to which "[t]he records and judicial proceedings of any court of any such State, Territory or Possession . . . . shall have the same full faith and credit in every court within the United States." While a proceeding before a state administrative agency can preclude a subsequent federal court action, such effect only applies to factual findings when the agency's decision has not been reviewed in a state court; the ultimate legal ruling does not bar a subsequent civil trial. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986)). However, the "[d]ecisions of state administrative agencies that have been reviewed by state courts are . . . given preclusive effect in federal courts." *Id.* (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 479-85, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982)). An exception is made for constitutional issues, however, whose adjudication "is not within [the Commission's] competence so as to bar a federal court['s]" reexamination. *Id.* at 193.

Defendants cite the Commission's factual finding that McCleester had engaged in "a pattern of

inappropriate and obnoxious behavior towards Center employees, including angry outbursts of yelling punctuated by swearing. This is unprofessional behavior that is totally inappropriate in the workplace." Exh. A attached to Document No. 5, p. 73. According to the Motion to Dismiss, because the Commission was "'acting in a judicial capacity to resolve disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' . . . . Plaintiff cannot, under § 1983, relitigate the merits of his termination and the investigation which led to it." Document No. 5, p. 9 (quoting *Edmundson*, 4 F.3d at 192). Defendants claim that the § 1983 allegations against Mackel, Rickabaugh, Smolko, Gorsuch, and Osborn depend on an inappropriate review in this Court of the Commission's findings that McCleester behaved inappropriately and obnoxiously. *Id.* Additionally, Defendants argue, because the Commission deferred judgment on the need to hear McCleester's complaints regarding the conditions of his post-reinstatement employment, there is an ongoing administrative proceeding that this Court should not interrupt. *Id.* at 9-10.

In response, Plaintiff argues that only two issues were before the Commission: 1) whether just cause supported McCleester's termination; and 2) "whether the dismissal was based upon discrimination against McCleester because of his disability." Document No. 7, p. 6. Thus, according to McCleester, the Commission did not review his substantive and procedural due process claims, the alleged Equal Protection violations, or any cause of action that arises from events subsequent to his reinstatement. *Id.* at 7-11. Furthermore, Plaintiff contends, the Commission reviewed McCleester's allegation of a conspiracy to discriminate, but did not address any conspiracy to deprive him of constitutional rights. Adjudicating this lawsuit, McCleester therefore argues, will not require any review of the issues that the Commission decided.

The Court agrees with Plaintiff. The Commission's conclusion that Plaintiff acted

8

inappropriately at work and was not the victim of a conspiracy to discriminate does not preclude judicial review of the § 1983 claims in this case. Count I of the Complaint alleges violations of procedural and substantive due process rights, as well as ongoing retaliation for McCleester's successful civil service appeal. Document No. 1, ¶¶ 55-56. The Commission's decision that just cause did not support Plaintiff's termination and that McCleester was not the victim of discrimination did not encompass the constitutional claims enumerated in the Complaint. Document No. 5-2, p. 49. Neither does the Complaint attempt any claim of discrimination. The Commission made no finding of fact regarding the constitutional adequacy of the investigation that gave rise to the claims before this Court. Even if it had, such issues were arguably beyond its competency and could not carry preclusive weight.

Furthermore, although Defendants correctly note that Plaintiff has filed his post-reinstatement claims with the Commission, the record indicates that the Commission "decided to defer judgment on the need" to render any decision. Document No. 5-6, p. 2. While the Commission does note that the Center enjoys the discretion to make many of the changes to McCleester's job about which Plaintiff complains, the Court is not bound by a letter of deferment. Accordingly, the Court finds that the Complaint is not precluded in any respect.

**B. Eleventh Amendment and Sovereign Immunities**

The Eleventh Amendment preserves within the federal judiciary the immunity from suit that states enjoy by virtue of their sovereignty. *Idaho v. Coeur d' Alene Tribe of Idaho*, 521 U.S. 261, 297, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997). The immunity is subject to Congress' abrogation powers, the state's waiver authority, and the principle first articulated in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). *Wheeling & Lake Erie Ry. v. PUC*, 141 F.3d 88, 91 (3d Cir. 1998). Nothing contained in 42 U.S.C. § 1983 suggests that Congress' general intent in enacting the statute

9

was to abrogate sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979). Nor has Pennsylvania waived its Eleventh Amendment protection. 42 PA. C.S. § 8521(b) ("Nothing . . . shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). However, the *Young* doctrine allows "suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted).

Moreover, under § 1983 "[e]very person who, under color of [state law] subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," enjoys no immunity and is therefore "liable to the party injured in an action at law." Because § 1983 is not an instance of Congressional abrogation, neither states, state agencies, nor state employees sued in their official capacities qualify as "persons" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (holding that state officials sued in their individual capacities are considered persons under § 1983); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (holding that states and their agencies are not persons under § 1983).

Immunity from state-law claims is much broader, subject only to the state's own waiver. Although Pennsylvania has preserved the full extent of its Eleventh Amendment immunity, it has waived its immunity from state-law claims in certain contexts. Under the Sovereign Immunity Act (hereinafter "SIA"), 42 PA. C.S. §§ 8521-28, plaintiffs may sue Pennsylvania "for damages arising out of a negligent act where the common law or a statute would permit recovery if the injury were caused by a person not protected by sovereign immunity." *Mullin v. DOT*, 870 A.2d 773, 779 (Pa. 2005)

10

(citing 42 PA. C.S. § 8522(a)). However, the specific claim for damages must fall within one of nine narrowly construed categories. *Id.* at 786 n.8 (noting that "exceptions to sovereign immunity are to be narrowly construed").[2] Pennsylvania courts have made explicit a principle implied in the language of the SIA: "[W]hen an employee of a Commonwealth agency was acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims." *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992). The SIA also protects state "officials and employees acting within the scope of their duties . . . from suit except as the General Assembly shall specifically waive the immunity." 1 PA. C.S. § 2310 (2006).

Against the backdrop of these general principles, the Court will separately examine what immunities each Defendant enjoys.

### 1.    The Department

As an executive agency, the Department shares the full vigor of the Commonwealth's Eleventh Amendment immunity. 71 PA. C.S. § 61 (listing executive agencies); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996) (finding that Eleventh Amendment immunity extends to the Department). Therefore, the Court must dismiss all of Plaintiff's federal claims against the Department. *Will*, 491 U.S. at 65 (finding that the term "person," as used in § 1983, does not encompass the states themselves); *Blanciak*, 77 F.3d at 696-97 (dismissing a § 1983 suit against the Department on grounds of the Eleventh Amendment). Neither can McCleester and his wife proceed against the Department

---

[2] Those categories are: (1) vehicle liability; (2) medical professional liability; (3) care custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 PA. C.S.§ 8522(b); *Durham v. Dep't of Corr.*, 173 Fed. Appx. 154, 157 (3d Cir. 2006) (nonprecedential opinion).

11

under their state-law claims, none of which fall within the purview of 42 PA. C.S. § 8522.

## 2. The Center

The Center is equally immune from the federal claims only if it is an arm of the state, for the "Supreme Court has long held that counties, municipalities and political subdivisions of a state are not protected by the Eleventh Amendment." *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)). Whether an entity is an arm of the state or merely a political subdivision bereft of immunity depends on "(1) whether the payment of the judgment would come from the state, (2) what status the entity has under state law, and (3) what degree of autonomy the entity has." *Id.* (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc). Although the three factors merit equal weight, "in close cases . . . the principal rationale behind the Eleventh Amendment—protection of the sovereignty of states through the prevention of federal-court judgments that must be paid out of a State's treasury—should remain our prime guide." *Id.* at 229-30 (citations omitted).

In support of their motion, Defendants note that Pennsylvania's Vocational Rehabilitation Act established the Office of Vocational Rehabilitation (hereinafter "OVR") as a subset of the Department of Labor and Industry and specifically provided for the Center's administration. Document No. 5, p.

11. Indeed, 43 PA. C.S. § 682.7(a)(7)

establishe[s] within the Department of Labor and Industry the Office of Vocational Rehabilitation. Except as otherwise provided by State or Federal law, the office, acting under the policies of the board, shall provide vocational rehabilitation services to individuals with disabilities determined to be eligible therefor. In carrying out the purposes of this act, the office shall, among other things:

. . . .

(7) Administer the Hiram G. Andrews Center at Johnstown.

12

Defendants also refer the Court to § 682.7(d), which establishes a "special nonlapsing fund" for the revenue generated at the Center. Additionally, § 682.9(b) mandates that Pennsylvania's State Treasurer "shall make disbursements from such funds and from all funds available for purposes of the Hiram G. Andrews Center at Johnstown in accordance with law."

Because the OVR—itself an office within the Department—administers the Center, and because the Secretary of the Department and the Executive Director of the OVR control the Center's funds in conjunction with the state treasury, the only other court to consider this issue found that the Center qualified as an arm of the state eligible for Eleventh Amendment protection. *Thomas v. Dugan*, No. 81-474, 1983 U.S. Dist. LEXIS 18956, at **9-12 (W.D. Pa. Feb. 28, 1983). The Court's research indicates that in the time since *Thomas*, there has occurred no substantial change in either the applicable law or governance of the Center that would warrant divergence from that decision. Accordingly, the Court must also dismiss with prejudice all claims against the Center.

### 3. The Individual Defendants

The only remaining Defendants are therefore those individuals with whom McCleester worked. According to Congress, civil rights claimants may recover monetary damages from state officials sued in their personal capacity. 42 U.S.C. § 1983; *Hafer*, 502 U.S. at 31. However, individual state officers sued in their official capacities are vulnerable only to claims for prospective equitable relief. *Hafer*, 502 U.S. at 27. Of the eleven individuals that the McCleesters name in their Complaint, all but one—Stephen M. Schmerin (hereinafter "Schmerin")—are sued in both their official and individual capacities; Schmerin is sued only in his official capacity as Secretary of the Department. Moreover, with a single exception, Plaintiff and his wife seek only monetary damages. Document No. 1, ¶¶ 58, 69, 81, and 89. That one exception is McCleester's request for "reinstatement of [his] position as

13

Facilities Maintenance Manager." *Id.* at ¶ 58. The Court must therefore dismiss with prejudice the federal claims to the extent Plaintiff seeks monetary relief from individuals sued in their official capacities. However, the Eleventh Amendment does not impede McCleester's pursuit of prospective injunctive relief from Defendants in their official capacities or monetary damages from Defendants personally.

The analysis of an individual's sovereign immunity against state-law claims is more layered. First, if the defendant acted outside the scope of his official duties, there is no immunity from suit. 1 PA. C.S. § 2310 (2006). Even when a defendant has acted within the scope of his duties, however, Pennsylvania has waived his sovereign immunity in nine types of cases. 42 PA. C.S. § 8522. Plaintiffs have not disputed that the individual Defendants were acting within the scope of their duties. Moreover, the Court has already found—and Plaintiffs again do not dispute—that none of the claims *sub judice* are found in § 8522. The only issue is whether the McCleesters are nonetheless entitled to pursue certain types of relief. Plaintiffs argue that the "Pennsylvania Supreme Court has stated that suits brought against state officials are not barred by sovereign immunity when the relief requested is to restrain the state official from continuing the conduct." Document No. 7, p. 13.

It is true that "suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity." *Fawber v. Cohen*, 532 A.2d 429, 433-34 (Pa. 1987) (quoting *Phila. Life Ins. Co. v. Commonwealth*, 190 A.2d 111, 114 (1963)). However, "it is the substance of the relief requested and not the form or phrasing of the requests which guides our inquiry." *Stackhouse v. Commonwealth*, 892 A.2d 54, 61 (Pa. Commw. Ct. 2006) (citing *Legal Capital, LLC v. Med. Prof'l Liab. Catastrophe Loss Fund*, 750 A.2d 299, 302-03 (Pa. 2000). In *Stackhouse*, the plaintiff asserted various tort claims and requested that the court "restrain [state] officials from subjecting plaintiff to any

14

investigative process or system in which no training, guidelines, policy, limitation or restriction is utilized to protect the rights to which Plaintiff is entitled." *Id.* (citation omitted). The court concluded that sovereign immunity barred the request: "While facially seeking to restrain conduct, the ultimate thrust of the relief requested is to obtain an order mandating imposition of guidelines, policies, limitations, and restrictions upon State Police internal investigations." *Id.* at 62. The request was thus dismissed.

According to Plaintiff, he and his wife "are respectfully requesting that the Defendants effectively reinstate McCleester to his job and all the aspects thereof by stopping or restraining the Defendants from [their] injurious and harmful behaviors which effectively prevent McCleester from performing" his duties. *Id.* The request is predicated on McCleester's contention that Defendants constructively suspended him by decreasing his responsibilities and restricting his communication with other Center employees. Document No. 7, pp. 15-16. The "ultimate thrust" of the relief Plaintiffs seek in their state-law claims is therefore the Court-ordered alteration of the manner with which McCleester is treated at the Center. Because an order mandating certain behavior would in essence compel some affirmative action, it is within Pennsylvania's doctrine of sovereign immunity. *Fawber*, 532 A.2d at 433. Accordingly, Plaintiffs' state law claims cannot survive.

## C. The Adequacy of Plaintiff's § 1983 Claims

After superimposing on the Complaint the Defendants' sovereign immunities, the only claims remaining are those McCleester has stated under §§ 1983 and 1985 against the individual Defendants for personally violating his federal rights, as well as McCleester's request in Count I for prospective relief. In addition to asserting their immunity from suit, Defendants have also challenged the substantive validity of these remaining claims. Before proceeding to the merits, however, the Court first

15

pauses to note the pleading standards for civil rights complaints.

Although the Third Circuit expressly disavows the presence of any particularity requirement in § 1983 suits, it is clear that claimants must state the relevant conduct, time, and place of the alleged infringement, as well as the specific identity of those responsible. *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980). Thus, in actions before this Court,

> [a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). While this principle may be of somewhat dubious vintage, it has nonetheless survived the United States Supreme Court's most recent pronouncements on the sufficiency of § 1983 complaints. *Compare id.* (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (relying on *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922-23 (3d Cir. 1976)), in determining the specificity required in civil rights pleading) *with Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004) (suggesting that the Supreme Court's decisions in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), superceded *Rotolo*) *and Thomas v. Independence Twp.*, 463 F.3d 285, 295, 298 (noting that, in light of *Leatherman* and *Swierkiewicz*, "a civil rights complaint filed under § 1983 against a government official need only satisfy the notice pleading standard of [FED. R. CIV. P.] 8(a)," but still requiring allegations of a defendant's personal involvement). McCleester must therefore identify how each individual was personally involved with the alleged infringements of his federal rights.

16

## 1. Fourteenth Amendment Procedural Due Process

The Court ordinarily employs a bifurcated analysis when addressing alleged violations of procedural due process brought under the Fourteenth Amendment and § 1983. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). However, because the Parties do not contest that McCleester possessed a property interest in his employment with the Center, the viability of his procedural due process claim depends on whether the Center afforded him adequate procedures prior to any deprivation of that property interest. Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 929, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997) (citation omitted). Moreover, while the Fourteenth Amendment does assure some minimum level of procedural protection, it "is not a guarantee against incorrect or ill-advised personnel decisions." *Collins v. City of Harker Heights*, 503 U.S. 115, 129, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (quoting *Bishop v. Wood*, 426 U.S. 341, 350, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976)). Nonetheless, within those parameters employees such as McCleester are generally

> entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing. . . . [T]he pretermination hearing should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. . . . [P]retermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story.

*Gilbert*, 520 U.S. at 929 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)).

McCleester first argues that he was deprived sufficient process because he received no notice for the original fact-finding meeting with Dr. Reynolds; could not eat anything or take his medications during that meeting; and was not allowed to access records supporting his explanations. Document No.

17

7, p. 14. Plaintiff also asserts that Defendants violated his due process rights by refusing to admit counsel into the second fact-finding meeting and by effecting on McCleester a *de facto* suspension in the wake of his reinstatement. *Id.* at 15. According to Plaintiff, "[h]e has been suspended without notice and without an opportunity to be heard" because, upon return from the fifteen-day suspension, his responsibilities were substantially restricted, he no longer supervised any employees, his contact with coworkers was virtually eliminated, he received a new office without air-conditioning, and he no longer had a fax machine, computer, multi-line phone, or secretary at his disposal. *Id.* at 15-16.

Accepting the truth of Plaintiffs' factual allegations, it is clear that Defendants advised Plaintiff of the charges against him and described the support for those charges. Document No. 1, ¶¶ 32, 34-37. Neither the lack of counsel nor the inability to offer supporting records denied McCleester the opportunity to respond. In its focus on providing an initial check against mistakes, *Loudermill* rejected the notion that full evidentiary hearings are required predeprivation. McCleester therefore possessed no right to counsel during either the June 1 or August 2 meetings, and the lack of advance notice did not render the June 1 hearing constitutionally infirm. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 193-94 (3d Cir. 1993) (validating the use of oral notice at pretermination hearings); *Panozzo v. Rhoads*, 905 F.2d 135, 140 (7th Cir. 1990) ("[A]n employee has no constitutional right to counsel at a pre-termination hearing."); *Grier v. Phila. Hous. Auth.*, No. 93-5625, 1995 U.S. Dist. LEXIS 2231, at **23-25 (E.D. Pa. Feb. 23, 1995) (holding that the lack of counsel at a pretermination hearing does not contravene *Loudermill*).

The Court agrees, however, that McCleester's physical condition required some accommodation, for incapacitated employees do not have the opportunity to respond that *Loudermill* requires. Employers may not set the conditions of predeprivation hearings in such a manner that employees are

18

incapable of explaining their questioned conduct. *Cf. Franklin v. City of Evanston*, 384 F.3d 838, 845 (7th Cir. 2004) (holding that the defendant's failure to grant the employee immunity deprived the employee of an opportunity to respond when his explanation may have been self-incriminating). Although the opportunity to respond was an essential element of Plaintiff's pretermination due process rights, the Center deprived McCleester of that opportunity when it denied him necessary food and medicine during a five-hour meeting. Thus Defendants did not meet their obligations under *Loudermill*. Nor is this deficiency cured by the availability of sufficient post-termination process. The *Loudermill* Court anticipated such circumstances when it held that "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the [relevant] statute." *Loudermill*, 470 U.S. at 547-48. *See also Morton v. Beyer*, 822 F.2d 364, 368 (3d Cir. 1987) ("[T]he availability of extensive post-termination procedures does not eliminate the essential requirement of due process that a hearing be provided before discharge"); *Gniotek v. City of Philadelphia*, 808 F.2d 241, 243 (3d Cir. 1986) ("The predeprivation hearing . . . is necessary, even if extensive post-deprivation remedies are afforded.").

Although the physical restriction on McCleester's opportunity to respond during the 2004 pretermination hearings may have violated the Due Process Clause, the Center's failure to properly notify Plaintiff of the post-reinstatement changes to his job did not. McCleester's theory of *de facto* suspension is not entirely without legal support. As the Third Circuit has noted "[s]uspension can be defined as 'the temporary deprivation of a person's powers or privileges, esp. of office or profession,' or 'temporary removal from office or privilege.'" *Solomon v. Phila. Hous. Auth.*, 143 Fed. Appx. 447, 452 n.6 (3d Cir. 2005) (nonprecedential opinion). Nonetheless, the Court finds that something more substantial than reduced responsibilities is required. A litigant who reports to work and receives full

19

pay cannot credibly argue that a *de facto* suspension has occurred simply because he supervises fewer employees or is not assigned particular projects. In reviewing the circumstances of Plaintiff's post-reinstatement position, the Court cannot discern a constitutionally recognizable deprivation because McCleester had no property interest in an air-conditioned office, a secretary, or various business machines.

Furthermore, the Court must dismiss the Procedural Due Process claim against Defendants Osborn, Rickabaugh, Smolko, Gorsuch, Schmerin, Wildeman, Gannon, and Sariano. McCleester has failed to allege any degree of personal involvement from Defendants Schmerin, Wildeman, Gannon, and Sariano. Plaintiff has also indicated that he had supervisory control over Defendants Osborn, Rickabaugh, Smolko, and Gorsuch. Document No. 1, ¶¶ 26-27. Because personal involvement is "shown through allegations of personal direction or of actual knowledge and acquiescence," this admission precludes any finding of § 1983 liability against McCleester's subordinates. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## 2. Fourteenth Amendment Substantive Due Process

McCleester also complains that his *de facto* suspension deprives him of a liberty interest in violation of his substantive due process right to employment. More specifically, Plaintiff argues that

McCleester has been so restricted by Defendants' actions in advising employees to have no contact with him, by not assigning him any meaningful presentations and to continue his effective work on the ESCO project, which is ongoing, and by having no employees to supervise, that he has been and continues to be unable to pursue his chosen employment.

Document No. 7, p. 17. Moreover, McCleester avers that because his contact with coworkers has been severely limited, his "substantive due process guarantee has been violated in that he is not permitted to freely associate or speak with people of his own choosing." *Id.* Lastly, McCleester believes that

20

because he prevailed before the Commission and was reinstated at the Center, he "has been retaliated against in that he has not been put in the same position that he . . . held" before the fifteen-day suspension. *Id.* at 17-18. McCleester therefore contends that the current nature of his employment violates his right to work.

Although McCleester has identified a property interest for which the Due Process clause affords him procedural protection, "not all property interests worthy of [such] protection are protected by the concept of substantive due process." *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989). Instead,

> when a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir, 2000). The *Nicholas* court went on to survey the consensus among federal courts that "tenured public employment is [not] a fundamental property interest entitled to substantive due process protection." *Id.* Because the court found public employment "more closely analogous to those state-created property interests that this Court has previous deemed unworthy of substantive due process," it affirmed the dismissal of an employee's substantive due process argument. *Id.* at 143. *See also Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006) (summarily rejecting a substantive due process claim on the basis of *Nicholas*).

In opposition to Defendants' motion, McCleester cites various cases for the principle that the Fourteenth Amendment "guarantee[s] the right to pursue an occupation." Document No. 7, p. 16 (citing *Piecknick v. Pennsylvania*, 36 F.3d 1250 (3d Cir. 1994)). Cases such as *Piecknick*, however, uphold

only the "right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference." *Piecknick*, 36 F.3d at 1259. This principle, however, only protects against government action that "forecloses [the claimant's] freedom to take advantage of other employment opportunities." *Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir. 1984). It does not regulate how employers disseminate work assignments or allocate office equipment. Claimants such as McCleester—displeased with adverse decisions regarding their particular public employment—may seek relief only under the rubric of procedural due process. Thus, even assuming that the manner with which the Center has treated McCleester subsequent to his reinstatement does constitute a *de facto* suspension, his only recourse would be through the Due Process Clause's procedural component. Accordingly, the Court must dismiss Plaintiffs' substantive due process claim.

The Court also notes that, as with McCleester's procedural due process claim, the substantive due process claim also fails as to Defendants Osborn, Rickabaugh, Smolko, Gorsuch, Schmerin, Wildeman, Gannon, and Sariano for failure to allege personal involvement.

### 3.    Fourteenth Amendment Equal Protection

According to the Equal Protection Clause, "no State shall . . . deny to any persons within its jurisdiction the equal protection of laws." U.S. CONST. amend. XIV, § 1. McCleester might state an equal protection claim if he demonstrates that "the government is treating unequally those individuals who are *prima facie* identical in all relevant respects, and that the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by the defendant." *Levenstein v. Salafsky*, 414 F.3d 767, 775-76 (7th Cir. 2005) (citations omitted). Litigants who do not allege membership in a group may proceed under the "class of one" theory set forth in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam). Such claimants must allege "that (1) the defendant

22

treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

McCleester avers that the changed circumstances since his return from the fifteen-day suspension constitute a violation of his right to equal protection under the law, as guaranteed by the Fourteenth Amendment. Plaintiff claims that "Defendants have not credited [him] with the appropriate number of vacation days, sick days, and personal days in the same manner as they do to similarly-situated employees," and that Defendants' conduct has been without rational relation to legitimate government objectives.   Document No. 1, ¶¶ 50, 66.  McCleester also believes that the substantial reduction in his responsibilities at the Center, the discontinuation of his supervisory duties, and the other restrictions imposed since his reinstatement constitute significantly different treatment than what the Constitution requires. Document No. 7, p. 19. These allegations, though sparse, meet the requirements for an Equal Protection claim.

However, the failure to allege the personal involvement of Defendants Osborn, Rickabaugh, Smolko, Gorsuch, Schmerin, Wildeman, Gannon, and Sariano is again a fatal flaw requiring dismissal of McCleester's Equal Protection claim as to those Defendants.

### 4.   First Amendment Retaliation

McCleester also alleges that his diminished responsibilities at the Center, as well as the unequal treatment he endures, are prompted by "retaliat[ion] . . . for succeeding in the State Civil Service Commission suit." Document No. 1, ¶¶ 56, 66. According to Plaintiff, since being reinstated, he has not been "permitted to exercise his right to freely speak with whomever he chooses." Document No. 7, p. 17. Defendants suggest that this allegation constitutes a First Amendment retaliation claim, which

is only colorable against the individuals who may have been personally involved in any retaliation, Defendants Yeager and Rullman. Document No. 5, pp. 18-20.

In order to state a First Amendment retaliation claim, McCleester "must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Although perhaps in the minority of federal courts of appeal, the Third Circuit broadly vests constitutional protection over the speech inherent in non-sham petitions from public employees, even if they do not implicate matters of public concern. *Hill*, 455 F.3d at 242 n.24 (citing *San Filippo v. Bongiovanni*, 30 F.3d 424, 441-43 (3d Cir. 1994)). Thus, McCleester's successful appeal to the Civil Service Commission was a protected exercise of his First Amendment rights, and the Complaint indicates that the appeal was the only reason behind the alleged retaliation. Document No. 1, ¶¶ 56, 66. However, Counts I and III, where McCleester located his allegations of retaliation, simply name every Defendant identified in the caption of the Complaint. Clearly, such a litany does not sufficiently allege personal involvement. In his more substantive allegations, McCleester fails to illustrate the personal involvement of most Defendants; the only specific individuals allegedly responsible are Rullman and Yeager. Document No. 1, ¶¶ 44-52. The Court will therefore dismiss Plaintiff's First Amendment Retaliation claim against all defendants except Rullman and Yeager.

### D. The Adequacy of Plaintiff's § 1985 Claim

Finally, Defendants move to dismiss Count II, wherein McCleester alleges that Defendants Mackel, Rickabaugh, Smolko, Gorsuch, and Osborn have collectively "conspir[ed] with each other, at one time or another, to deprive Plaintiff, either directly or indirectly, of his privileges and immunities under the laws, specifically Plaintiff's civil rights guaranteed by the Fourteenth Amendment," in

24

violation of 42 U.S.C. § 1985(3). Document No. 1, ¶ 60. According to Defendants, McCleester is unable to satisfy each element of a § 1985 claim:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)). *See also Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006). The Court's earlier conclusion that McCleester may not have received an adequate *Loudermill* hearing undercuts Defendants' argument that Plaintiff cannot show an underlying constitutional violation. The validity of Plaintiff's § 1985 claim thus depends on whether applicable law precludes McCleester from demonstrating appropriate class-based discriminatory animus.

Merely because Plaintiff constitutes a class of one for purposes of the Fourteenth Amendment does not entitle him to the safeguards codified in § 1985. Because of that statute's unique history, courts are reluctant to transform it into a "'general federal tort law'" and vigorously enforce the requirement that § 1985(3) plaintiffs allege some "'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (quoting *Griffin*, 403 U.S. at 101-02). *See also Lake v. Arnold*, 112 F.3d 682, 687 (3d Cir. 1997) (indicating that § 1985(3) is "'concerned with those discrete and insular minorities who have traditionally borne the brunt of prejudice in our society.'" (quoting Ken Gormley, *Private Conspiracies and the Constitution: A Modern Version of 42 U.S.C. Section 1985(3)*, 64 TEX. L. REV. 527, 550 (1985))). The emerging consensus among federal authority therefore falls against the "class of one"

theory in the § 1985(3) context. *See, e.g., Royal Oak Entm't, LLC v. City of Royal Oak*, 205 Fed. Appx. 389 (6th Cir. 2006) (unpublished opinion) (holding that classes of one are not entitled to the special protection of § 1985(3)); *Jackson v. Gordon*, 145 Fed. Appx. 774, 778 (3d Cir. 2005) (nonprecedential) (affirming the rejection of a § 1985(3) claimant's "class of one" theory); *C & H Co. v. Richardson*, 78 Fed. Appx. 894 (4th Cir. 2003) (unpublished decision) (same); *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 12 n.4 (1st Cir. 2000) (rejecting a "class of one" § 1985 argument); *Welsh v. Male*, No. 05-6838, 2007 U.S. Dist. LEXIS 20267, at **14-15 (E.D. Pa. Mar. 22, 2007) (same); *Traveler v. Ott*, No. 06-304, 2006 U.S. Dist. LEXIS 86724, at *7 (N.D. Ind. Nov. 29, 2006) ("[A] class of one is not a protected class for purposes of § 1985(3)."); *Ferrone v. Onorato*, 439 F. Supp. 2d 442, 452-53 (W.D. Pa. 2006) ("Plaintiffs, as a class of one, are not a group that the Supreme Court would recognize as being subject to any legitimate class based animus which would support a Section 1985(3) claim."); *Brewer v. Comm'r*, 435 F. Supp. 2d 1174, 1179 (S.D. Ala. 2006) (holding that a class of one does not "demonstrate the racial or class-based discrimination that is required to state a claim under § 1985(3)"); *Cataldo v. Moses*, 361 F. Supp. 2d 420 (D.N.J. 2004) (adopting in relevant part Magistrate's opinion found at No. 02-2588, 2004 U.S. Dist. LEXIS 29209, at ** 72-74). Thus, unless he is able to establish membership in some discrete and insular minority that constitutes a recognized class under settled equal protection doctrine, Plaintiff cannot proceed under § 1985.

## IV. CONCLUSION

Based on the foregoing, the Court must dismiss with prejudice all claims against the Department, the Center, and those individual Defendants sued in their official capacity for monetary damages. The Court will also dismiss with prejudice Plaintiffs' state-law claims. The Court will dismiss without prejudice McCleester's § 1985 conspiracy claim in its entirety, as well as all claims

against Defendants Osborn, Rickabaugh, Smolko, Gorsuch, Schmerin, Wildeman, Gannon, and Sariano. As to Defendants Mackel, Rullman, and Yeager, the Court will dismiss without prejudice that portion of McCleester's due process claim based on his post-reinstatement treatment; and McCleester's substantive due process claim. As to Defendant Mackel, the Court will dismiss without prejudice McCleester's First Amendment retaliation claim. Plaintiff may submit an amended complaint restating these claims on or before August 13, 2007.

An appropriate Order follows.

**AND NOW**, this 16th day of July, 2007, upon consideration of Defendants' Motion to Dismiss

(Document No. 4), **IT IS HEREBY ORDERED** that the Motion is **GRANTED** in part and **DENIED**

in part. Specifically,

**1)** Count I is dismissed with prejudice as to Defendants Department of Labor and Industry and Hiram G. Andrews Center;

**2)** Count I is dismissed as to Defendants Osborn, Rickabaugh, Smolko, Gorsuch, Schmerin, Wildeman, Gannon, and Sariano. Plaintiff is granted leave to file an amended complaint within twenty days with regard to the claims against these Defendants;

**3)** Count II is dismissed with prejudice as to Defendants Department of Labor and Industry and Hiram G. Andrews Center;

**4)** Count II is dismissed as to Defendants Mackel, Rickabaugh, Smolko, Gorsuch, and Osborn. Plaintiff is granted leave to file an amended complaint within twenty days with regard to the claims against these Defendants;

**5)** Count III is dismissed with prejudice as to Defendants Department of Labor and Industry and Hiram G. Andrews Center;

**6)** Count III is dismissed as to Defendants Osborn, Rickabaugh, Smolko, Gorsuch, Schmerin, Wildeman, Gannon, and Sariano. Plaintiff is granted leave to file an amended complaint within twenty days with regard to the claims against these Defendants;

**7)** Counts IV, V, and VI are dismissed with prejudice as to all Defendants.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**

28